

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
06/28/2007

| | | |
|---|---|---|
| IN RE: | § | |
| JASON A. CADWALLDER | § | CASE NO: 06-36424 |
| Debtor(s) | § | |
| | § | CHAPTER  7 |

<u>**MEMORANDUM OPINION REGARDING
METHOD OF FILING US TRUSTEE'S STATEMENT OF PRESUMED ABUSE
AND TIMELINESS OF THE US TRUSTEE'S MOTION TO DISMISS
(DOC # 11)**</u>

  The United States Trustee filed a motion to dismiss Debtor's Chapter 7 bankruptcy case as an abuse of the Bankruptcy Code: § 707(b)(2) and (b)(3).  Debtor asserted that the motion was not filed timely and properly, and the Court determined to address those issues prior to addressing the merits of the motion.  The parties have submitted stipulated facts that are sufficient to decide those issues.  For reason stated below, the Court concludes that the US Trustee's motion to dismiss is timely and may be prosecuted.  Debtor's objections to the motion related to inadequacy of the US Trustee's statement under Bankruptcy Code § 704(b) are overruled, and the objection to the timeliness of the US Trustee's motion to dismiss is overruled.

## I.   BACKGROUND

A. Summary of the events and of Debtor's contentions

  Bankruptcy Code § 704(b)(1)(A) requires the US Trustee to file a "statement" concerning whether the statutory presumption of bankruptcy abuse (a/k/a the "means test") applies in a chapter 7 case.  Although the statutory presumption involves a complex mathematical analysis that challenges even the most astute and informed professionals, the statute seems to require the US Trustee to consider more than just the math since it requires the US Trustee to "review all materials filed by the debtor," not just Form B22 (which attempts to assist the implementation of the complex statutory language).  The statement of the US Trustee's conclusions about presumed abuse must be filed within 10 days after the creditors' meeting.  If the US Trustee states that the presumption applies, then § 704(b)(2) requires the US Trustee to determine whether the debtor's income exceeds the applicable median household income.  If the US Trustee has determined that the presumption applies and that the debtor's income exceeds the applicable median, then the US Trustee must either (i) file a motion to dismiss the case or (ii) state why he will not file a motion to dismiss.

  The meeting of creditors was continued twice in this case for Debtor to provide additional information.  The US Trustee filed a § 704(b) statement on February 2, 2007: nine days after the conclusion of the creditors' meeting, thirty-seven days after the commencement of the meeting. The US Trustee made his statement by causing an entry to be made on the docket of this case. That entry stated the US Trustee was unable to determine from the documents filed by the

Debtor whether the presumption applied.  Twenty-four days later, the US Trustee caused an entry to be made on the docket of this case stating that the US Trustee concluded that the presumption of abuse was triggered.  On the same day, the US Trustee filed a motion to dismiss the case under § 707(b) as abusive of the Bankruptcy Code.

In his response to the US Trustee's motion to dismiss, Debtor asserted that the "statement" filed by the US Trustee does not satisfy the requirements of § 704(b) because only a docket entry was prepared, and no underlying "document" was prepared and filed.  Later, in his memorandum of authorities, Debtor argues further that neither the "statement" nor the motion to dismiss was timely filed because the US Trustee filed the statement within 10 days after the conclusion of the creditor's meeting, not within 10 days from the commencement of the creditors' meeting.  Finally, in his memorandum of authorities Debtor argues that the US Trustee's first docket entry is not adequate because it did not state whether the presumption of abuse arises, it merely stated that the US Trustee could not determine whether the presumption of abuse arises.

B.    Docket Sheets in the Electronic Age

     1.    Explanation of the Electronic Docket: Documents, Images, and Entries

A "docket sheet" is an index of a case.  It documents the history of the case in a list of "docket entries" organized chronologically.  Traditionally, a docket entry records an event (such as a hearing or trial) or documents the filing of a pleading or other instrument such as the petition commencing the bankruptcy case, a notice generated by the Clerk, an order, a judgment, *etc*.  Each docket entry is dated and generally is assigned a sequential number.  Each docket entry includes a summary of the relevant event or document.

Prior to the computer age, dockets were created manually on paper, first by hand and then by typewriter.  Documents were submitted to the court in paper form, a clerk handwrote (and then later in history typed) the requisite information on a sheet of paper, and the original document was fastened into a folder that was the "case file."  The docket sheet was, mostly, an index of the paper file.

Federal courts now use an electronic system.  CM/ECF was developed by the Administrative Office of US Courts to bring courts into the twentieth century.  The system is designed to be paperless.  There is no longer a case "file" with paper documents.  The vast majority of documents never exist in paper form in the Clerk's office; they are produced by attorneys in electronic form and are submitted to the Clerk over the internet as computer files, "PDF documents" which are images.[1]  When these PDF documents are submitted electronically

---

[1] "PDF" is computerese and makes sense to those of us who are geeky enough to pay attention to such things, even superficially.  Computers communicate with each other with strings of symbols (collectively called a "computer file").  This string of symbols (the "computer file") means something only if interpreted by the right computer program.  To allow the human user to distinguish one computer file from another (and thus designate the file on which the user wants to work) computer files are given names.  By convention, file names consist of a combination of letters, numbers, and symbols, then a "dot" (the symbol for a period in conventional typing), and then a three letter "extension."  The "extension" is important principally to the computer because it tells the operating system of the computer which program can read that file.  "PDF" is the extension that indicates that the

to the Clerk, the attorney who submits them provides certain information from which the Clerk's computer generates a docket entry to index the file. The computer data submitted by the attorney and the docket entry are stored in the Clerk's computer. "Documents" prepared within the court, such as orders, notices, judgments, *etc*. are similarly prepared, transmitted, and docketed without any paper having been generated. Occasionally the Clerk receives paper documents, from *pro se* litigants for example. When paper documents are submitted to the Clerk, they are scanned and turned into PDF documents on the Clerk's computer. The Clerk then generates the electronic docket entry through which the PDF document is accessed. Some courts destroy the paper copies. Other courts keep them for varying periods, but only as a precaution. No courts use the paper documents; only the electronic computer images are used by the courts, the parties, and the public. The data that constitutes the electronic "case file" is stored on the Clerk's computer and is made available to the court staff and to the public in a form that can be read by human beings, but only by using compatible computers and programs. Federal courts discourage the filing of paper documents. In summary, clerks of court no longer maintain paper records of court cases; the electronic docket and the computer PDF files attached to the docket entries are the court's file.[2]

Attorneys receive service of these PDF documents electronically. Likewise, they can receive docket entries electronically. The parties have stipulated that electronic copies of the docket entries made by the US Trustee were sent to Debtor's counsel.

CM/ECF allows for creation of standardized docket entries by "radio button." A party, when properly authorized by the court, can cause the computer to create and to display a docket entry containing language (pre-authorized with respect to form and content) by the court. The CM/ECF system then serves the docket entry on specified parties. These "radio buttons" are used for a number of purposes, by a number of entities as authorized by the court. The process is used only when the matter is routine, the language of the docket entry is simple and short, and the need is simply to record an event or a statement of position. The process is used to reduce administrative costs and to simplify administration of estates. For example Chapter 7 trustees and Chapter 13 trustees use "radio buttons" to report that there are no assets to administer, that the § 341 Meeting of Creditors has been held and continued, that the creditors' meeting has been concluded, *etc*. The US Trustee has been authorized by the court to use a "radio button" to make the US Trustee's statement concerning whether the presumption of abuse arises under § 707(b), *etc*.

When a "radio button" is used to make these docket entries, the docket entry contains all of the information and is the only record in the electronic case file. There is no separate "document," and there need not be, because all of the information appropriate to the docket entry appears on the face of the electronic docket sheet. A separate PDF document would be superfluous and would waste judicial resources because it would require more computer time and would require greater computer storage capacity. Creation of a separate "document" would actually delay access to the information since a party who wanted to access the information would find it necessary first to look at the docket entry and then to access the document linked to

---

computer file is readable by a computer program known as Adobe Acrobat, which is the program that must be used to produce and to read the computer files that are usable by CM/ECF .

[2] Rule 5005 of the Federal Rules of Bankruptcy Procedure (FRBP).

that docket entry. By putting the information in the docket entry itself, access to the information requires one less step.

The use of docket entries to record events and requirements in a case, without production of a separate computer imaged "document," is common and is increasing. Some courts (although not the Southern District of Texas, yet) routinely use the docket entries to memorialize orders. Some courts use these "docket orders" extensively for routine matters. In those cases, no separate written order is issued or created.

C.     Facts Stipulated by the Parties

   1.     Case filing and docket sheet entries

Jason Cadwallder ("Debtor") filed a petition commencing this case under chapter 7 of the Bankruptcy Code on November 16, 2006. The first date set for the § 341 Meeting of Creditors was December 26, 2007.[3] The meeting commenced on that date and was continued to January 9, 2007.[4] Debtor appeared at the continued meeting. The docket entry from that January 9 meeting states that the meeting was further continued to January 23, "in the event requested documents are not provided *debtor to provide domestic support address to Trustee*"[5]

The docket sheet indicates that the meeting was concluded on January 24.[6]

   2.     The 10 day statement

On February 2, 2007, (thirty-seven days after the commencement of the creditors' meeting but 9 days after the conclusion of the creditors' meeting), the US Trustee caused to be entered on the docket the following information:

> Having reviewed the documents, if any, filed by the debtor and any additional documents provided to the United States Trustee, the United States Trustee is currently unable to determine whether the debtor's case would be presumed to be an abuse under Section 707(b) of the Bankruptcy Code. Filed by U.S. Trustee. (Hickman, Ellen) (Entered: 02/02/2007).[7]

   3.     The Supplemental Statement

On February 26, 2007, (the first business day that is 60 days after the commencement of the creditors' meeting, 33 days after the conclusion of the creditors' meeting) the US Trustee

---

[3] Doc. # 23, Stipulated Fact #5.
[4] Doc. # 23, Stipulated Fact #6.
[5] Docket entry for January 9, 2007.
[6] Doc. # 23, Stipulated Fact #9. Debtor did not appear at the January 24 meeting because he satisfied all of the trustee's document requests prior to this date.
[7] Doc. # 23, Stipulated Fact #10.

caused the following docket entry to be made on the docket of this case (the "Supplemental Statement"):

> The United States Trustee previously filed a statement under section 704(b)(1)(A) [the docket entry at February 2, 2007] indicating an inability to determine whether this case would be presumed to be an abuse. The United States Trustee has reviewed all materials filed and submitted by the Debtor, including certain additional documents received after the filing of the United States Trustee's initial statement under section 704(b)(1)(A). Based on this review, the United States Trustee has determined that the Debtor's case is presumed to be an abuse under 11 U.S.C. section 707(b)(2). Filed by U.S. Trustee. (Hickman, Ellen) (Entered: 02/26/2007).[8]

No separate PDF file was submitted.

4.   Motion to dismiss

The US Trustee filed his Motion to Dismiss on the same day that he filed the Supplemental Statement. That day was 24 days after the initial statement and 33 days after the conclusion of the creditors' meeting; it was the first business day that was 60 days after the commencement of the creditors' meeting.[9]

5.   Summary of these dates

The following table summarizes these dates and stipulations:

| Date | Deadline or Event |
|---|---|
| 11/16/06 | Debtor filed chapter 7 bankruptcy petition |
| 12/26/06 | "First date set" for creditors' meeting under § 341; meeting commenced; continued to January 9 for Debtor to supply more information |
| 1/5/05 | January 5 is ten days after 12/26/05; Debtor contends that the US Trustee's statement was due on this date |
| 1/9/07 | Docket sheet indicates that at this continued creditors' meeting, the trustee requested a "domestic support address" from Debtor; meeting was continued to 1/23, "in the event requested documents are not provided";[10] on some date prior to January 23, Debtor provided the additional data; the date that the information was provided is not stipulated;[11] |

---

[8] Doc. # 23, Stipulated Fact #11.
[9] *Id*.
[10] Docket entry for January 9, 2007. See also stipulation 7 of stipulated facts in docket # 23.
[11] Doc. # 23, Stipulated Fact #8.

| Date | Deadline or Event |
|------|-------------------|
|  | On some date between January 9 and January 24, Debtor provided the "domestic support address;" the date that the address was supplied is not stipulated. |
| 1/24/07 | The chapter 7 trustee caused a docket entry to be made indicating that the creditors' meeting was concluded. |
| 2/2/07 | This date is 9 days after the conclusion of the creditors' meeting; the US Trustee caused a docket entry to be made stating "the United States Trustee is currently unable to determine whether the debtor's case would be presumed to be an abuse under Section 707(b) of the Bankruptcy Code" |
| 2/24/07 | This is the date that is 60 days after the first date set for the meeting of creditors. However, February 24 was a Saturday. Therefore, any deadline for a filing due on February 24 is automatically extended to February 26 (FRBP 9006(a)). |
| 2/26/07 | Deadline for filing motions to dismiss under FRBP 1017(e), "[e]xcept as otherwise provided in § 704(b)(2)." US Trustee caused a docket entry to be made stating "The United States Trustee has reviewed all materials filed and submitted by the Debtor, including certain additional documents received after the filing of the United States Trustee's initial statement under section 704(b)(1)(A).  Based on this review, the United States Trustee has determined that the Debtor's case is presumed to be an abuse under 11 U.S.C. section 707(b)(2);" in addition, US Trustee filed a motion to dismiss under § 707(b)(2) and (3). |

## II.   DEBTOR'S ARGUMENT

Debtor argues that the US Trustee filed his motion to dismiss after the deadline.  Debtor contends (i) that even if the docket entry constitutes a "statement" it was not timely because the 10 days should be measured from the first date set for the meeting of creditors and not from the conclusion of the meeting of creditors, (ii) that the docket entries made by the US Trustee are not "sufficient," a "document" is required, and (iii) that a statement of inability to determine whether the presumption of abuse arises is not an adequate "statement."

Debtor did not argue that the US Trustee's motion to dismiss was not filed timely under FRBP 1017(e), but the Court has tried to address that issue, as best it can with the authority available, in the following analysis.

### III.    CONCLUSIONS OF LAW

A.    Statutory Interpretation

    1.    Bankruptcy Code § 704(b) provides:

> (1) With respect to a debtor who is an individual in a case under this chapter--
> > (A) the United States trustee… shall review all materials filed by the debtor and, not later than 10 days after the date of the first meeting of creditors, file with the court a statement as to whether the debtor's case would be presumed to be an abuse under section 707(b); and
> > (B) not later than 5 days after receiving a statement under subparagraph (A) the court shall provide a copy of the statement to all creditors.
>
> (2) The United States trustee… shall, not later than 30 days after the date of filing a statement under paragraph (1), either file a motion to dismiss or convert under section 707(b) or file a statement setting forth the reasons the United States trustee… does not consider such a motion to be appropriate, if the United States trustee… determines that the debtor's case should be presumed to be an abuse under section 707(b) and the product of the debtor's current monthly income, multiplied by 12 is not less than [applicable state median family income]…

    2.    Bankruptcy Code § 707(b) provides:

> (1) After notice and a hearing, the court, on its own motion or on motion by the United States trustee, trustee… or any party in interest may dismiss a case filed by an individual debtor… whose debts are primarily consumer debts… if… the granting of relief would be an abuse of the provisions of this chapter…
>
> (2)(A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse… the court shall presume abuse exists if the debtor's current monthly income… multiplied by 60 is not less than the lesser of …

    3.    Threshold issue: Is the US Trustee's timely performance of his § 704(b) duties a prerequisite for him to file a motion to dismiss under § 707(b)?

        Debtor asserts that the US Trustee's strict compliance with § 704(b) requirements to make a timely "statement" is a prerequisite for the US Trustee to file a motion to dismiss under § 707(b), and that the Court should deny a motion filed more than 30 days after the statement

because, in Debtor's view, the motion is not timely.  Debtor argues that he is entitled to an early and clear statement of whether the availability of chapter 7 relief is challenged as an abuse of the Bankruptcy Code.  Debtor analogizes the statutory requirement and deadline for the US Trustee to file a statement (and the statutory requirement and deadline for the US Trustee to file a motion to dismiss or a statement declining to file the motion) as analogous to the deadline for filing an objection to discharge or to dischargeability of a debt (which is set by FRBP 4004 and 4007 at 60 days after the first date set for the meeting of creditors).

Virtually all of the authority that the Court has seen to date (which is discussed below) seems to assume that § 704(b) establishes a deadline for US Trustee action and that a tardy motion is time-barred.  The Court is very reluctant to swim upstream against the assumptions of so many learned writers.  But for reasons set forth below, the Court believes that § 704(b) establishes a duty, but does not establish the penalty for failure to perform that duty, and therefore even if a US Trustee failed to comply strictly with his § 704(b) duties, his motion to dismiss would not (merely for that reason) be time-barred.

>           a.    The establishment of a duty, even with an explicit deadline for performance of that duty, does not necessarily establish a penalty for failure to meet the deadline

The Supreme Court has held that an action by a government agency is valid, even if the action is performed after a statutory deadline, unless the statute provides otherwise.

> We accordingly read the 120-day provision as meant "to spur the Secretary to action, not to limit the scope of his authority," so that untimely action was still valid….  If a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction.[12]
> …
> [A] statute directing official action needs more than a mandatory "shall" before the grant of power can sensibly be read to expire when the job is supposed to be done.[13]

Section 704(b) specifies no "consequence" for tardy action by the US Trustee.  Therefore it is not clear why everyone assumes that a US Trustee motion is time barred if the time expires before "the job is supposed to be done."  That assumption is not the common practice in bankruptcy.  For example, Bankruptcy Code § 521(a)(1) requires a debtor to file certain information, such as bankruptcy schedules, statement of financial affairs, *etc.*  FRBP 1007(c) sets the "time limits" for filing those documents, which in general is 15 days after the date that the petition was filed.  So a debtor has a duty and a time limit for performance: 15 days.  But there is no consequence if the debtor files the documents on the 16th day.  It is clear that Congress knew how to set deadlines and how to establish consequences for failure to meet deadlines.  Section 521(i) provides that if the debtor fails to file the material by the 45th day, the case is

---

[12] *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 158-159, 123 S.Ct. 748 (2003) (citations omitted).
[13] *Id.* at 161.

automatically dismissed.  But Congress did not specify consequences for a debtor's failure to file schedules on the 15th day; it is not until the 46th day that the case is dismissed by statute.

Since Congress did not specify "consequences" for the US Trustee's failure to meet the §704(b) deadlines, following *Barnhart* the Court understands that "ordinarily" there would be none.  That is not to say that the US Trustee has no deadline for filing a motion to dismiss.  As discussed below, the Court believes that it is not only appropriate, but essential, that the Federal Rules of Bankruptcy Procedure provide a uniform and clear deadline for filing these motions.  That deadline seems to have been set at 60 days after the first date set for the meeting of creditors.  In the case at bar, the US Trustee met that deadline and therefore his motion was timely.

> b. Close reading of the statute supports the conclusion that the deadlines in § 704(b) are not fatal to a motion filed after the dates set out there

> i. *The language of the statute*

Section 704(b) is titled "Duties of trustee."  Prior to BAPCPA, it established certain duties for chapter 7 trustees.  It was expanded by BAPCPA to establish duties for the US Trustee.  Deadlines (such as deadlines for filing objections to discharge)[14] have generally been set by the Federal Rules of Bankruptcy Procedure, not by § 704 of the Code.  There is no authority that the Court has been able to find that suggests that BAPCPA intended to change the purpose of that section.  Section 704(b) does not establish any penalty or disadvantage that the US Trustee incurs by failing to file a timely statement or by not strictly meeting the requirement in § 704(b)(2) to file a motion to dismiss within 30 days after making the statement.

> ii. *Interpretation of § 704(b) as setting a deadline is not consistent with the application of other statutory provisions for the administration of a bankruptcy case*

Congress did not limit prosecution of § 707(b) motions to the US Trustee.  Section 707(b) gives to the court, on its own motion, and to all parties in interest the right to file a motion to dismiss for substantial abuse.  Each of these three categories of potential movants[15] has an independent right.  If strict compliance with § 704(b) were a prerequisite for the US Trustee to bring a § 707(b) motion to dismiss, then the statute must be intended as a penalty solely applicable to the US Trustee.  There is no statutory authority to suggest that other parties in interest or the court could not bring a motion.  And if they did, § 707(b) makes the application of the statutory presumption mandatory even if the US Trustee fails to make any statement at all.  Debtor argues that § 704(b) deadlines were intended to give the Debtor an early and definitive statement of whether his case would be challenged as "abusive," but obviously that could not be Congress' objective since even if the US Trustee makes no statement, a debtor would not have that comfort until the deadline had run for creditors and the Court to bring their own motions.  In any event, it is not likely that Congress would have established a standard (dismissal of bankruptcy cases for abuse) and then would have relegated enforcement of that standard to the

---
[14] *See* § 704(a)(6), FRBP 4004, 4007.
[15] The Court, the US Trustee, and creditors.

Court acting on its own motion if the US Trustee missed a deadline.  Rules 4004 and 4007 set deadlines that are applicable to all parties and that run at the same time.  There is no indication of any reason why Congress would have intended an earlier deadline to apply only to the US Trustee.  If noncompliance with § 704(b) precluded the US Trustee from bringing a motion to dismiss, the effect would be to shift the burden to the Court or to creditors.  The Court knows of no logic supporting that result.

Second, the requirement for a "statement" is remarkably informal.  Even with the imprecision of BAPCPA, it is unlikely that a statement was intended to establish a deadline.  The statute requires a statement, not a motion or a notice.  The Clerk, not the US Trustee, must provide a copy of the statement to all creditors.  The statute does not require "service" on the creditors, it does not require service on the debtor; it does not even require the Clerk to provide a copy to the debtor.  The unusual limitations and the informality of the requirement to "provide a copy" imply that the statement is not intended to be a significant limitation on the ability to prosecute an action.  Throughout the Code, when procedural due process and limitations are involved, the Code requires a motion, with "notice and a hearing."  A requirement for a statement (instead of a more formal document) and a requirement to "provide a copy" (instead of "serving" a document) are, to the best of the Court's knowledge, unique.  They suggests some purpose other than limitations and due process.[16]

The fact that the Clerk is required to provide a copy to creditors (but there is no requirement to provide a copy to the debtor, nor even a requirement to serve or to transmit a copy to creditors) suggests that the statement is intended to be for creditors' information and benefit.  If the statement were intended to benefit someone else (such as the debtor) one would expect that the statute would require service on them or at least require that the court provide them with a copy.

It is therefore logical to conclude that creditors and the court, not the debtor, are the intended beneficiaries of the short deadlines for the US Trustee's statement.  As noted, in addition to the US Trustee, the court and creditors are authorized to bring motions to dismiss for substantial abuse.  By making a statement to the court and by requiring the court to provide a copy of the statement to creditors, the statute effects a mechanism for letting these alternative movants know whether they need to file their own motions.  If the US Trustee will take on that burden, then there is no reason for these other parties to file their own motions.

---

[16] The Court can find no similar provision for "providing a copy" in the Bankruptcy Code.  The Federal Rules of Bankruptcy Procedure do include a number of provisions for "transmitting" copies, but each of these provisions are for the Clerk to provide a copy of various documents to the US Trustee.  Several rules of the Federal Rules of Bankruptcy Procedure refer to "transmitting" copies of various pleadings or materials.  Rule 1007(l) requires the Clerk of Court to transmit to the US Trustee a copy of every list, schedule, and statement filed under rule 1007.  Rule 1009 requires the Clerk to transmit to the US Trustee any amendments to those documents.  Rule 1019 requires the Clerk to transmit to the US Trustee copies of documents filed when chapter 11, chapter 12, and chapter 13 cases convert to chapter 11.  Rule 2013 requires the Clerk to transmit a copy of fee summaries to the US Trustee.  And Rule 3018 requires the Clerk to transmit a copy of a chapter 13 plan to parties in interest if the court requires it and requires the Clerk to provide a copy to the US Trustee.  But the Court cannot find any other requirements for "providing" a copy, as § 704(b)(1)(B) requires.  Regardless, it is notable that events with significance require service of pleadings, and that § 704(b)(1)(B) requires "providing" a copy, that the duty is on the clerk, and that the clerk is only required to provide a copy of the statement to the creditors.

That logic is supported by a reading of both statutory provisions, in their full breadth, in context. The statutory scheme contemplates that the debtor will file required documentation and that the US Trustee will examine that documentation within 10 days after the meeting of creditors. The US Trustee is then required to opine whether the mathematical analysis defined in § 707(b) results in a presumption of abuse or not. There is no requirement that the creditors accept the US Trustee's conclusion or that the Court accept that conclusion. Creditors could bring their own motions to dismiss, or the Court could initiate the proceeding on its own motion; if that occurred, § 707(b) provides that the presumption of abuse "shall" apply if the mathematical calculation so determines. Creditors and the Court are not bound by the US Trustee's conclusions. Apparently all that the US Trustee's statement does is to tell creditors that, in the US Trustees' opinion, the creditor will or will not be aided by the statutory mathematical analysis and to give them some preliminary indication about whether the US Trustee will pursue that issue or whether they must pursue it themselves if they want the issue pursued. It does not tell the debtor that no motion to dismiss will be filed or that the statutory presumption is definitively unavailable. Therefore, contrary to Debtor's argument, the 10 day notice cannot serve the function of giving definitive notice as FRBP 4004 and 4007 do.

Finally, it is reasonable to interpret § 704(b) as a duty rather than as a limitation because Congress made no provision for extension of the deadline. This statute is not known as a statute intended to enhance debtors' rights. It is not reasonable to think that Congress would have intentionally withheld from the court the authority to extend a deadline, especially a deadline that is so short.[17]

The leading treatise in the field, *Collier on Bankruptcy*, refers to § 704(b) requirements as a duty of the US Trustee, not as a deadline.

> Although section 704, prior to 2005, had been concerned with duties of chapter 7 trustees, the 2005 amendments added a new subsection (b) that sets forth duties of the United States trustee … in cases of all individual debtors. These duties pertain to the determination of whether a chapter 7 case is an abuse as defined by section 707(b) and, in particular, the presumption of abuse under section 707(b)(2)…
>
> The first duty is to review the materials filed by each individual debtor, and not later than 10 days after the date of the meeting of creditors, file with the court a statement as to whether the case is presumed to be an abuse under section 707(b).…
>
> The Court is to provide a copy of the statement filed by the United States trustee to all creditors within five days after it is filed. Presumably, this is to give creditors an opportunity to file their own motions to dismiss under section 707(b)(2), if they are eligible to do so. However, it is likely that

---

[17] If one adopted the Debtor's analysis (including the argument that a "statement" is inadequate if it asserts that the US Trustee cannot make a determination because of insufficient information) it would be possible for a debtor to cause the US Trustee to breach the deadline simply by withholding information.

>most creditors will wait to see if the United States trustee files a motion, thereby saving them the expense.[18]

The statement required by § 704(b)(1) and the motion required by § 704(b)(2) work hand in glove. The time for filing the motion derives from the time for filing the statement. In all logic, they must both be considered as determining, for creditors, whether the US Trustee will bring a § 707(b) motion to dismiss or whether creditors or the Court must bring it.

The Court concludes that § 704(b) is a mandate for US Trustee action imposed for the benefit of the Court and other parties in interest, not a deadline.[19] Therefore, even if the US Trustee had not met the § 704(b) deadlines, the motion would not be time barred merely for that reason.

B.      Limitations in the Federal Rules of Bankruptcy Procedure

Rule 1017(e)(1) of the Federal Rules of Bankruptcy Procedure provides:

>Except as otherwise provided in § 704(b)(2), a motion to dismiss a case for abuse under § 707(b) or (c) must be filed only within 60 days after the first date set for the meeting of creditors … unless on request filed before the time has expired, the court for cause extends the time for filing the motion to dismiss.

The Advisory Committee note to that rule states:

>The conforming amendments to subdivision (e) preserve the time limits already in place for § 707(b) motions, except to the extent that § 704(b)(2) sets the deadline for the US Trustee to act.

This language is less than definitive. On first reading, it seems to imply that § 704(b)(2) sets a deadline, but if that is what is intended, the language is very unfortunate.

First, the rule and the Advisory Committee note refer only to § 704(b)(2) as potentially setting a deadline. That suggests that the Advisory Committee did not view § 704(b)(1) as an important element in the deadline. If that were correct, the US Trustee could be tardy in filing a statement under § 704(b)(1) but nevertheless file the motion within 30 days of the tardy 10 day statement and still satisfy § 704(b)(2) and rule 1017(e)(1).

Second, as explained in a long discussion below, there is a material dispute between the parties in the case at bar concerning whether the 10 days runs from the commencement or from the conclusion of the creditors' meeting. Rule 1017(e) states that the 60 day deadline for filing

---

[18] 6 *Collier on Bankruptcy* ¶ 704.17 (15th rev. ed.).

[19] Three cases assume, without actually needing to reach the issue, that § 704(b) establishes a deadline. *In re Singletary*, 354 BR 455 (Bankr. S.D. Tex. 2006); *In re Vartran*, 2007 WL 640006 (Bankr, E.D. Cal. 2007); and *In re dePellegrini*, 2007 WL 1429037 (Bankr. S.D. Ohio 2007). The Court does not believe that the cases hold that § 704(b) establishes a deadline, but to the extent that they do, this Court respectfully disagrees.

motions to dismiss under § 707(b) run from the "first date set," but the language in the rule excepts § 704(b)(2). That leaves us with no definitive statement of when the deadline under § 704(b)(2) begins to run.

*Collier on Bankruptcy* interprets rule 1017(e) as recognizing § 704(b) as setting a deadline.[20] However, as noted below, *Collier* also takes the position that the deadline runs from the conclusion of the creditors' meeting, not the first date set for the creditors meeting. Therefore, if one accepts both of *Collier's* interpretations, the US Trustee's motion in this case is timely. The US Trustee's statement was filed 9 days after the conclusion of the creditors' meeting and the US Trustee's motion was filed 24 days after the statement.

If *Collier* is correct in both interpretations, however, there will be unanticipated consequences. Those who view § 704(b) as setting a deadline seem to assume that the deadline is shorter than the 60 day deadline established in Rule 1017(e). If the creditors' meeting were not concluded until more than 20 days after its commencement, the § 704(b) deadline would be longer than the Rule 1017(e) deadline. Take this example. Assume that the first date set for a creditors meeting is March 1. It would not be unusual for the debtor not to appear on that first date, and it would not be unusual for significant documentation to be missing or obviously incorrect. In such circumstances, trustees usually continue the meeting to another date. If the meeting were continued to a date that is 21 days later, the date of the continued meeting would be March 22. If the meeting were concluded on that date, the deadline for the US Trustee's statement would be due on April 1. The deadline for a US Trustee's motion to dismiss would be May 1. But the other deadlines in Rule 1017(e) would be 60 days after the first date set for the creditors' meeting, which is April 30. Any continuance of the 341 meeting for more than 22 days makes the disconnect even worse.

There is no doubt that it would be a very good thing to have a clear deadline for all parties to file a § 707(b) motion to dismiss. Interpreting § 704(b) as a duty rather than as a deadline allows for this. Rule 1017(e) establishes a clear and conspicuous deadline for all parties. It is easy to compute, definitive, and does not yield unanticipated results. The deadline for a motion to dismiss by any eligible movant is 60 days after the first date set for the creditors' meeting, unless a party in interest timely asks for an extension and the request is granted.

In the case at bar, the 60 day deadline was a Saturday, so the deadline was extended to Monday when the US Trustee filed his motion. Therefore the motion was timely under Rule 1017(e).

C. Even if the deadlines for the US Trustee's statements were somehow a prerequisite for the US Trustee's action, the US Trustee satisfied those deadlines in the case at bar.

Debtor contends that the reference to "date of the first meeting of creditors" is a reference to the date first set for the § 341 meeting of creditors. Under this interpretation, the deadline for

---

[20] 9 *Collier on Bankruptcy* ¶ 1017.07 (15th rev. ed.).

the 10-day statement would be January 5, 2007, and the deadline for the US Trustee's motion to dismiss would be February 4. The US Trustee contends that the ten-day period begins when the meeting is concluded, not the date that it was scheduled to commence or the date that it actually commenced. Under this interpretation, the deadline would be February 3 and the deadline for the US Trustee's motion to dismiss would be March 5. Both parties rely on the "plain meaning" of the words in the statute.

If the US Trustee is arguing that § 704(b) extends the Rule 1017(e) deadline, the Court rejects that argument. As noted, the Court concludes that § 704(b) establishes a duty, not a deadline. FRBP 1017(e) clearly establishes a 60 day deadline for any party to file a motion to dismiss under § 707(b): 60 days after the first date set for the meeting of creditors. As noted above, if § 704(b) were interpreted as setting a deadline, and if the § 704(b) deadline ran from the <u>conclusion</u> of the creditors meeting, the consequence might be that the § 704(b) deadline might be longer than the rule 1017(e) deadline.

       1.       "First" Meeting of Creditors

These competing contentions resurrect an argument over computation of the deadline for filing objections to discharge and to dischargeability of debts that raged until 1999. Rules 4004 and 4007 of the Federal Rules of Bankruptcy Procedure define those deadlines by reference to the meeting of creditors. Two sets of problems commonly arise: "resets" of creditors' meetings and "continuances" of creditors' meetings. Sometimes the clerk of court sends out a notice of a creditors meeting, and then the date must be changed for one reason or another; in that event, the Clerk usually sends out a second notice, resetting the date. Sometimes the meeting is "adjourned" or "continued" to subsequent dates because a debtor failed to appear for the meeting or because the trustee needs additional information from the debtor. Jurisprudence was split over whether the deadlines ran from the "first date set" or from a "reset" date and over whether a continuance extended the deadline.

In 1999, the Judicial Conference of the United States proposed, and Congress permitted the revision of the rules to define the deadline as 60 days after "the first date set for the meeting of creditors under § 341(a)."

For over a decade then, the difficulty of interpreting the concept "after … the creditor's meeting" has been apparent. If Congress intended § 704(b) to establish a deadline, it is unfortunate that Congress did not provide language that tracks the 1999 revision of the rule, or provide language that clearly establishes another measure. Congress used precise language in other parts of the statute: §§ 521(a)(2)(B), 521(e)(2)(A)(i), 1308.

The word "first" in the statute is problematic. Although § 704(b) refers to "the first meeting of creditors" the statutory provision that defines the meeting, § 341(a), does not use the word "first." The statutory language is "meeting of creditors" and "a meeting of creditors." It does not refer to a "first" meeting of creditors. But there is no provision for a "second" or subsequent meeting of creditors. So what does "first" mean?

The meeting required by § 341 is an important event in a bankruptcy case, but the references to it in the Bankruptcy Code are not as precise as one might hope. The event (in both the statute and in common parlance) is referred to pretty much interchangeably as "the §341 meeting," the "first meeting of creditors," the "creditors' meeting," and the "meeting of creditors."[21] While the Code contains many deadlines triggered by the § 341 meeting, the syntax used is rarely identical. For example:

> "within 30 days after the first date set for the meeting of the creditors..."[22]

> "not later than 45 days after the first meeting of creditors…"[23]

> "not later than 7 days before the date first set for the first meeting of creditors…"[24]

> "not later than the day before the date on which the meeting of the creditors is first scheduled to be held under section 341(a)."[25]

> "not earlier than 20 days and not later than 45 days after the date of the meeting of creditors under section 341(a)."[26]

The syntax "first date set" is the only one of these variations that is definitively interpreted in the jurisprudence and in common parlance. Since Congress did not use the words in that sequence, one cannot conclude that the plain language establishes that meaning. It might not exclude that interpretation, but it does not establish that interpretation. "First meeting" is used in general parlance as roughly equivalent of "creditors' meeting" and "341 meeting." Therefore, the function of "first" in § 704 is ambiguous, at best, and one cannot determine the "plain meaning." The Court concludes that the most reasonable interpretation is to recognize the essential equivalence of "first meeting of creditors" and "meeting of creditors" in general parlance. This interpretation would make the word "first" surplusage; and the Court recognizes that that would violate principles of statutory construction, but the Court is not aware of any better alternative.

    2.    "Date"

As the US Trustee notes, "the singular includes the plural," so the term "date" must be read as "dates" to include the entire period that that the § 341 meeting convenes.[27] Thus, if one then reads the statutory language to be

---

[21] 6 *Collier on Bankruptcy* ¶ 704.17[1] (15th rev. ed.).
[22] 11 U.S.C. § 521(a)(2)(B).
[23] 11 U.S.C. § 521(a)(6).
[24] 11 U.S.C. § 521(e)(2)(A)(i).
[25] 11 U.S.C. § 1308(a).
[26] 11 U.S.C. § 1324(a).
[27] 11 U.S.C. § 102(7).

> not later than 10 days after the date<u>s</u> of the first meeting of creditors …

and if one concludes that "first" is ambiguous at best, then one must conclude that the deadline refers to all dates of the first meeting of creditors and therefore includes continuances or resets.

The ten days in which the US Trustee must file his statement runs from the end of the creditors' meeting, not the commencement of the creditors' meeting. *Collier on Bankruptcy* agrees:

> The statement must be filed within 10 days after the date of the "first meeting of creditors." The "first meeting of creditors" is a term sometimes used in the past to refer to the section 341(a) meeting of creditors. The language is somewhat unclear, but logically it makes sense to read this deadline as running from the conclusion of the meeting of creditors, rather than the first date set for the meeting of creditors, which is specifically referenced in some other Code provisions enacted at the same time. Otherwise, if the debtor is unable to attend the meeting on the first date set, or provide all necessary documents, the United States trustee might not have all the materials necessary to make an accurate determination.[28]

    3.    Docket Entry as a "Statement"

Debtor argues that the docket entries by the US Trustee are not the "statements" required by the Code.

Section 704(b)(1) provides that:

> (A) the United States trustee. . . shall review all materials filed by the debtor and, not later than 10 days after the date of the first meeting of creditors, file with the court a statement as to whether the debtor's case would be presumed to be an abuse under section 707(b); and
>
> (B) not later than 5 days after receiving a statement under subparagraph (A), the court shall provide a copy of the statement to all creditors.[29]

    a.    Statement

"Statement" is not a defined term in the Bankruptcy Code, in the Federal Rules of Bankruptcy Procedure, or in the Local Rules. Black's Law Dictionary defines statement:

---

[28] 6 *Collier on Bankruptcy* ¶ 704.17[2] (15th rev. ed.).
[29] 11 U.S.C. § 704(b)(1).

> In a general sense an allegation; a declaration of matters of fact. The term has come to be used of a variety of formal narratives of facts, required by law in various jurisdictions as the foundation of judicial or official proceedings and in a limited sense is a formal, exact, detailed presentation.
>
> An oral or written assertion, or nonverbal conduct of a person, if it is intended by him as an assertion. Fed. R. Evid. 801(a)…[30]

Nothing inherent in the term requires a statement to be written. Indeed, even if it were written, under current federal practice it would not exist in tangible form. It would be merely a series of symbols of computer code that must be interpreted and made visible to humans by a computer program, Adobe Acrobat. The requirement that the statement be "file[d] with the court" suggests that an oral statement will not suffice, and suggests that the need for documentation in some form that is preserved in the court's records. A docket entry is, like all current pleadings in bankruptcy court, not tangible, but is a series of electronic pulses that are interpreted by software and displayed to the user by plasma, LCD, or cathode ray tube technology.

    b.    Filing

Rule 5005 of the Federal Rules of Bankruptcy Procedure provides:

> **Rule 5005. Filing and Transmittal of Papers**
> …
> **(2) Filing by electronic means.**
> A court may by local rule permit documents to be filed, signed, or verified by electronic means that are consistent with technical standards, if any, that the Judicial Conference of the United States establishes. A document filed by electronic means in compliance with a local rule constitutes a written paper for the purpose of applying these rules, the Federal Rules of Civil Procedure made applicable by these rules, and § 107 of the Code.[31]

Local Bankruptcy Rule 5005 provides:

> **Local Rule 5005. Filing of Papers.**
>
> (a) The Texas statewide procedures for electronic filing are adopted by this court and are published on the Court's website.
>
> (b) Except as expressly provided or unless permitted by the presiding Judge, the Court requires documents being filed to be

---

[30] Black's Law Dictionary 1263 (5th ed. 1979).
[31] FRBP 5005(a).

>submitted, signed or verified by electronic means that comply with the procedures established by the Court. The notice of electronic filing that is automatically generated by the Court's electronic filing system constitutes service of the document on those registered as filing users of the system. [Amended by General Order 2007-1, effective 3-12-07].[32]

The Court's website provides as follows:

>**Statewide ECF Administrative Procedures.** The United States Bankruptcy Courts for the Northern, Southern, Eastern, and Western Districts of Texas (collectively, the "Texas Bankruptcy Courts") have each authorized the filing, signing and verification of documents by electronic means. The precise scope of documents authorized or required to be filed in an electronic format varies by district.[33]

To reduce costs, to improve timeliness of notices, and to simplify administration, the Bankruptcy Court for the Southern District of Texas has allowed the US Trustee to file the § 704 statement by choosing the correct "radio button" from the CM/ECF system developed by the Administrative Office of US Courts. The US Trustee's actions complied with the Court's requirements. The docket entry provided the same information that a linked image would have provided; it provided the information more efficiently and effectively, and it provided the information more timely. The Court concludes that a docket entry by the US Trustee satisfies the requirement for a "statement" by the US Trustee.

        c.     Service of the Statement

As noted, Debtor argues that the US Trustee's statements were not properly served. Section 704 requires the clerk of court to "provide a copy" of the US Trustee's statement to all creditors. The statute does not require that the statement be "served." It does not even require the Clerk to provide a copy to the debtor.

Therefore, Debtor's argument is rejected. First, Debtor does not have standing to complain that creditors were not provided a copy of the statement. Debtor actually received a copy, and (as far as the Debtor is concerned) that is more than the statute requires.

Second, the statute does not require service of the statement, it requires that the Court "provide a copy." In a sense, the Clerk "provided a copy" to creditors in the same manner that all information is available to creditors in a case. To look at a copy of a traditional document that is imaged, one must first access the docket sheet and then "click" on the link to the document. And, except for a "first look" by parties in interest in the case, a person accessing the document must pay a fee. In this case, anyone accessing the docket sheet (for which there is no

---

[32] BLR 5005.
[33] Administrative Procedures for Electronic Filing, http://www.txs.uscourts.gov/attorneys/cmecf/bankruptcy/adminproc.pdf

charge) was provided a copy of the US Trustee's statement, which was on the face of the docket sheet. Thus the use of a "docket sheet statement" actually provides a copy to creditors faster, and at less expense both for the Court and for creditors.

        d.        Adequacy of the US Trustee's Initial Statement

Debtor argues that the US Trustee's initial statement, *i.e.* the statement of inability to determine whether the debtor's case would be presumed abusive, does not satisfy the requirement of § 704. The essence of Debtor's argument is that the US Trustee has only two options: state that the means test is satisfied or state that it is not.

But "whether" is not a binary connector. A number of famous writers allow for at least three possibilities, and Jonathan Swift uses the word to introduce four possibilities:

> Gregariousness is always the refuge of mediocrities, whether they swear by Soloviev or Kant or Marx. Only individuals seek the truth, and they shun those whose sole concern is not the truth.[34]
>
> The only freedom which deserves the name is that of pursuing our own good in our own way, so long as we do not attempt to deprive others of theirs, or impede their efforts to obtain it. Each is the proper guardian of his own health, whether bodily, or mental or spiritual. Mankind are greater gainers by suffering each other to live as seems good to themselves, than by compelling each to live as seems good to the rest.[35]
>
> Every form of addiction is bad, no matter whether the narcotic be alcohol, morphine or idealism.[36]
>
> All national institutions of churches, whether Jewish, Christian, or Turkish, appear to me no other than human inventions, set up to terrify and enslave mankind, and monopolize power and profit.[37]
>
> "Off days" are a part of life, I guess, whether you're a cartoonist, a neurosurgeon, or an air-traffic controller.[38]
>
> I have been assured by a very knowing American of my acquaintance in London, that a young healthy child well nursed is at a year old a most delicious, nourishing, and wholesome food,

---

[34] Boris Pasternak, *Dr. Zhivago* (1957).
[35] John Stuart Mill, *On Liberty* 13 (1859).
[36] Carl Jung.
[37] Thomas Paine, *The Age of Reason*, Part I § I (1795).
[38] Gary Larson.

> whether stewed, roasted, baked, or boiled, and I make no doubt that it will equally serve in a fricassee, or a ragout.[39]

Courts generally avoid restricting "whether" to a binary choice. Thus words or phrases following "whether" in a statute will generally not limit the statute's meaning. *See Galbraith v. Gulf Oil Corp.*, 294 F. Supp. 817 (N.D. Ga. 1968) (statutory text stating "whether such commerce moves wholly by motor vehicle or partly by motor vehicle and partly by rail, express, or water" did not exclude commerce moved by pipeline). Therefore, it is reasonable to conclude that the choices available to the US Trustee are (i) the statutory presumption applies, (ii) the statutory presumption does not apply, and (iii) one cannot tell from the data available.

"Whether" must be interpreted in context, i.e., in context of the requirements of the statute and the alternatives that are possible. The statute requires the US Trustee to "review all materials filed by the debtor…" and then file a statement. The presumption of abuse is a mathematical calculation. If the debtor has not submitted adequate information, the US Trustee cannot make the calculation.[40] If the US Trustee cannot make the calculation, the US Trustee cannot make a statement. Requiring the US Trustee to make a statement that he cannot make would violate the maxim: The law does not require the impossible.

Therefore the Court concludes that a genuine and reasonable statement that the Trustee cannot make the computation without additional documentation is adequate for purposes of § 704(b). In this case the US Trustee made a definitive statement shortly thereafter. Other circumstances might yield different results. If there were proof that the US Trustee's statement of inability to make a determination was unreasonable, or dilatory, the Court might find estoppel or other relief for the debtor. That issue is not presented in this case.

### IV.   CONCLUSION

Debtor's objections to the US Trustee's motion to dismiss are overruled, so far as those objections relate to the matters addressed in this opinion are denied by separate order.

SIGNED 06/28/2007.

WESLEY W STEEN
United States Bankruptcy Judge

---

[39] Jonathan Swift, *A Modest Proposal* (1729).
[40] The stipulations on which this matter was submitted do not indicate that there is any dispute that the US Trustee needed and considered information provided after the 341 meeting, or even after the initial 10 day statement.